IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Daniel Schmidt and Kurt A. Herwald, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 6:05-1536-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| John F. McGovern and Steven Reynolds, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the court's sua sponte review of subject matter jurisdiction over the instant action. Daniel Schmidt and Kurt A. Herwald (collectively "plaintiffs") filed suit in the Court of Common Pleas of Greenville County, South Carolina, alleging numerous causes of action against John F. McGovern ("McGovern") and Steven Reynolds ("Reynolds") (collectively "defendants"). McGovern removed the case to federal court, claiming that this court has diversity and federal question jurisdiction. See 28 U.S.C.A. §§ 1331, 1332, and 1334 (West 1993 & Supp. 2005). Upon review, the court remands the case to the Court of Common Pleas of Greenville County.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The allegations set forth in the complaint all relate to the business dealings between the plaintiffs and the defendants concerning ChanneLinx, Inc. ("ChanneLinx"). ChanneLinx is an electronic commerce company offering supply chain automation software and services. (Compl. ¶ 6.) McGovern was a ChanneLinx shareholder and served as a director from May 19, 2000, and president from June 2001, until he resigned on June 28, 2002. (Id. ¶ 6.) Reynolds was employed as vice-president and chief financial officer of ChanneLinx from June

1

1, 1999, until he was terminated on June 24, 2002.  (Id. ¶ 9.)  Schmidt and Herwald were members of ChanneLinx's board of directors ("BOD"). (Id. ¶¶ 7-8.)

In 2000, ChanneLinx's revenues did not meet expectations, resulting in an operating loss of fifteen million dollars ($15,000,000).  ChanneLinx's financial condition further deteriorated into the summer of 2001, and the company replaced its president with McGovern in June 2001 to address its operating losses and dismal financial performance.  (Id. ¶ 11.)  Despite McGovern's employment, ChanneLinx failed to meet its financial expectations in the second half of 2001 and into 2002.  (Id. ¶ 13.)

To address the shortfall in capital, ChanneLinx's BOD approved a $450,000 loan to the company, to be accomplished by the issuance of "C Notes."  (Compl. ¶ 15.)  McGovern and Reynolds allegedly represented to the BOD and potential lenders that the loan would provide sufficient funds to pay ChanneLinx's operating expenses through late 2002, address current accounts payable issues, and fund a successful fourth quarter of 2002.  (Id. ¶ 17.)  The BOD and lenders allegedly relied on these representations in approving the $450,000 loan, and Schmidt and Herwald loaned money to ChanneLinx, becoming C Note holders.  (Id. ¶¶ 16, 18.)

Part of the loan was never advanced to ChanneLinx, however, because of a material adverse change in ChanneLinx's financial status.  ChanneLinx failed to make payments to the Internal Revenue Service ("IRS") for withholding taxes for the fourth quarter of 2001 and the first two quarters of 2002.  (Id. ¶ 19.)  ChanneLinx's failure to pay the IRS resulted in an IRS investigation, the IRS penalizing ChanneLinx, and part of the loan not being disbursed to

ChanneLinx.  (Id. ¶¶ 19, 20.)  The plaintiffs allege that McGovern, Reynolds, and Eric M. Lynch ("Lynch"), ChanneLinx's former controller, are responsible for these problems.  (Id. ¶ 16.)  Additionally, the plaintiffs allege that McGovern and Reynolds delayed in making employee trust payments and employee-funded amounts into employees' 401K plans between March 2002 and June 2002, resulting in an investigation by the Department of Labor.  (Compl. ¶ 21.)  Further, on May 29, 2002, the BOD was informed that two ChanneLinx employees had filed a lawsuit against ChanneLinx and its officers and directors for nonpayment of past-due sales commissions.  (Id. ¶ 22.)  When Reynolds and Lynch informed the BOD that ChanneLinx would miss an "imminent payroll," multiple members of the BOD, including McGovern, resigned, and Reynolds was terminated.  (Id. ¶¶ 23-25.)

On February 3, 2003, ChanneLinx filed a voluntary petition ("petition") for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of South Carolina.  ChanneLinx's plan for reorganization was approved on July 31, 2003, and the bankruptcy case was closed on June 30, 2004.  (Id. ¶ 32.)  Under the bankruptcy plan for reorganization, Schmidt and Herwald's C Notes, which represented their portion of the $450,000 loan to ChanneLinx, were converted into equity shares of ChanneLinx.  (Id. ¶ 33.)  At present, the equity shares that the plaintiffs received allegedly have a realizable value that is "only a fraction of the amount of their . . . loans to ChanneLinx."  (Id.)

The plaintiffs filed a complaint on April 7, 2005, in the Court of Common Pleas of Greenville County, South Carolina.  The plaintiffs allege claims against the defendants for breach of fiduciary duty, negligence, negligent misrepresentation, fraud, and deepening insolvency.  The plaintiffs argue that the defendants failed to advise the BOD and

3

misrepresented ChanneLinx's financial condition in an effort to prolong their employment. (Id. ¶ 26.) The plaintiffs further claim that if the BOD had been aware of ChanneLinx's financial situation and the inquiries of the governmental agencies, it could have prevented ChanneLinx's deepening insolvency. (Compl. ¶ 28.) Moreover, the plaintiffs assert that if the defendants had properly disclosed the financial condition of ChanneLinx, the plaintiffs could have either declined to lend ChanneLinx money or conditioned their loans on terms appropriate to protect repayment. (Id.) The plaintiffs assert that the defendants had a fiduciary duty to ChanneLinx and its shareholders and creditors, including Schmidt and Herwald, and the defendants breached this duty by failing to inform the BOD of ChanneLinx's failure to pay withholding taxes, nonpayment of employee benefits plan obligations, deepening insolvency, and claims by employees for sales commissions. (Id. ¶ 31.) The plaintiffs seek actual and punitive damages.

McGovern removed the case to this court on May 27, 2005.[1]

## II. DISCUSSION OF THE LAW

### A. Removal

McGovern argues that the court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, 1334. A case that has been removed "is not to be remanded if it was properly removable upon the record as it stood at the time that the petition for removal was filed." Brown v. Eastern States Corp., 181 F.2d 26, 28-29 (4th Cir. 1950). However, the

---

[1] At the time of removal, Reynolds had not been served process in this action. (Notice of Removal ¶ 2.) However, Reynolds consented to the removal. (Id. ¶ 3 & Ex. A (Reynold's Consent to Removal).)

court is "obligated to construe removal jurisdiction strictly because of the significant federalism concerns implicated. Therefore, [i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004) (internal quotation marks omitted); see also Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999) (explaining that "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction" (internal quotation marks omitted)).

### B. Diversity Jurisdiction & Fraudulent Joinder

Both of the plaintiffs and Reynolds are citizens of South Carolina, while McGovern is a citizen of Georgia. Ordinarily, Reynolds' citizenship would preclude this court's diversity jurisdiction. See Rosmer v. Pfizer, Inc., 263 F.3d 110, 123 (4th Cir. 2001). McGovern alleges that the court has diversity jurisdiction despite Reynolds' citizenship because the plaintiffs fraudulently joined Reynolds as a defendant. "The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "Under this doctrine, a district court can assume jurisdiction over a case even if there are nondiverse named defendants at the time the case is removed . . . dismiss the nondiverse defendant[s], and thereby retain jurisdiction." Id. However, "[t]he party alleging fraudulent joinder bears a heavy burden--it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 424. Therefore, unless McGovern shows that the plaintiffs have no "possibility of recovery" on any of their claims against Reynolds, the court cannot find that the plaintiffs fraudulently joined Reynolds. Id. McGovern argues that the plaintiffs

5

cannot recover against Reynolds because they released their claims against Reynolds on October 18, 2002, and again on May 12, 2004.

### 1. October 18, 2002, Release

First, McGovern claims that the directors and officers waived their claims against each other in the October 18, 2002, release ("October Release"). The October Release states in relevant part:

> This is to confirm our conversations of yesterday. Our final offer to you is as follows:
>
> 1. ChanneLinx owes you $23,019.25 resulting from the deferral of payroll. ChanneLinx has agreed to pay your COBRA expense for the next 18 months or until you become eligible for healthcare coverage through some other employer, whichever occurs first. As we discussed the COBRA payment is $722.28. For accounting purposes, this amount will be grossed up to reflect the amount of wages you would need to receive before withholding in order to make the payment.
>
> 2. In return you and each of the current officers and directors agree to waive any claims you may have against each other. You will retain the right to sue the company and its shareholders. The shareholders and company will retain the right to sue you. This waiver is strictly between you and the current officers and directors. Without limiting the generality of the foregoing, if you decide to sue the company to collect your deferred payroll or any other debt owed to you, you agree to not make a claim against the current officers or directors.
>
> 3. You also agree, provided the company does not breach any of the terms of this agreement, not to make any claim against the company for payroll deferral or because of any other debt owed to you for 24 months or until October 1, 2004. If the company is unable to make a required COBRA premium payment, you may bring your claims against the company before February 2004.

(Notice of Removal Ex. C (October Release).) Reynolds signed the October Release. (Id.) Schmidt and Herwald did not sign the October Release, but the plain language of the document implies that they consented, stating that "each of the current officers and directors agree to waive any claims you may have against each other." (Id. (emphasis added)). While

6

the October Release suggests that Schmidt and Herwald are barred from bringing the instant claims, the court cannot conclude that recovery against Reynolds is barred as a matter of law. A South Carolina court could construe the October Release as applying only to claims arising from the plaintiffs' positions as ChanneLinx directors, not as lenders to ChanneLinx. This interpretation reasonably acknowledges that Schmidt and Herwald, as lenders, concede more from the October Release than other members of the BOD who were not lenders, yet the agreement makes no mention of additional consideration to be paid to Schmidt and Herwald. Even if the October Release encompasses the plaintiffs' claims, a court could find the agreement unenforceable based upon Reynolds' alleged misrepresentations and fraudulent behavior. See Alderman v. Bivin, 106 S.E.2d 385, 389 (1958) (stating that a "contract may be reformed or rescinded . . . where the mistake . . . has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right"). Because the court cannot conclude that the October Release bars the plaintiffs from recovery against Reynolds as a matter of law, the first basis for fraudulent joinder is without merit.

### 2. May 12, 2004, Release

McGovern's second basis for fraudulent joinder is the May 12, 2004, release ("May Release"). McGovern alleges that Schmidt and Herwald "compromised their claims . . . in the confirmed Chapter 11 plan of reorganization in July 2003 [when they] compromised their claims as creditors in exchange for equity of the company." (Notice of Removal ¶ 18.) Specifically, McGovern relies on the wording of the May Release, which states in pertinent

part:

> **NOW, THEREFORE, FOR AND IN CONSIDERATION** of the sum of Two Thousand Two Hundred ($2,200.00) Dollars, paid by Reynolds to ChanneLinx, ChanneLinx does for itself and its shareholders, officers, employees, agents, insurers, sureties, successors, affiliated companies, and assigns, **HEREBY REMISE, RELEASE, ACQUIT AND FOREVER DISCHARGE** Reynolds, his heirs, successors and assigns, **OF AND FROM ANY AND ALL CLAIMS**, demands, debts, rights, actions, causes of action, costs, loss of service, property damage, fees, expenses, and compensation of whatsoever nature, now existing of which may hereinafter accrue . . . .

(McGovern's Supplemental Br. on Jurisdiction Ex. 2 (May Release at 1).) McGovern argues that the May Release bars the plaintiffs' claims. (Notice of Removal ¶ 26.) In the May Release, ChanneLinx compromised its right–and the right of its officers and shareholders–to recover from Reynolds. The May Release does not suggest that ChanneLinx settled any claims that the plaintiffs, not in their capacity as shareholders of ChanneLinx, had against Reynolds as an individual for allegedly inducing them to loan money to ChanneLinx. As such, the May Release does not support a finding of fraudulent joinder.

### B. Federal Question Jurisdiction Under 28 U.S.C. § 1331

McGovern claims that the court has jurisdiction under 28 U.S.C. § 1331 (West 1993). To the extent that McGovern alleges that 28 U.S.C.A. § 1334(b) (West 1993), in combination with § 1331, gives the court subject matter jurisdiction, the court addresses its jurisdiction under § 1334 below. However, to the extent that McGovern alleges that § 1331 supplies jurisdiction independent of § 1334, McGovern failed to adequately support his argument that § 1331 permits removal of this case.

### C. Federal Question Jurisdiction Under 28 U.S.C. § 1334

Finally, McGovern claims that the court has jurisdiction over the case under 28 U.S.C.A. § 1334(b) (West 1993). To establish jurisdiction under § 1334(b), McGovern must show that the case is related to ChanneLinx's bankruptcy. The instant case is related to ChanneLinx's bankruptcy if the outcome "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." New Horizon of NY LLC v. Jacobs, 231 F.3d 143, 151 (4th Cir. 2000) (internal quotation marks omitted). Although "a related to case need not necessarily be against the debtor or his property," the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." Id. (internal quotation marks omitted).

ChanneLinx's bankruptcy was closed in 2004. The plaintiffs are not seeking to recover against ChanneLinx in this action, and neither of the defendants is employed by ChanneLinx any longer. Further, it does not appear that the outcome of this litigation will affect ChanneLinx's reorganization in any way. Any recovery that the plaintiffs may receive from the defendants will be paid by the defendants, not by ChanneLinx, and ChanneLinx will receive no benefit from such recovery. Cf. New Horizon, 231 F.3d at 155. Because the court "should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction" and it is not clear that this case would have any effect on ChanneLinx's bankruptcy estate, the court concludes that the instant action is not within its "related to" jurisdiction under § 1334(b). Hartley, 187 F.3d at 425 (internal quotation marks omitted).

9

Finally, even if the claims were related to ChanneLinx's bankruptcy, this court would be required to abstain under 28 U.S.C.A. § 1334(c)(2), which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C.A. § 1334(c)(2) (West Supp. 2005). On June 23, 2005, in response to the court's order for briefing on jurisdiction from the parties, the plaintiffs concluded that "the Court should find it does not have subject-matter jurisdiction over this case and the case should be remanded to the state court." (Pls.' Supplemental Br. Regarding Jurisdiction at 4.) The court construes this response as a timely motion to remand the case. Accordingly, because § 1334b would provide the sole basis for jurisdiction in this case, and the instant action was initiated and may be timely adjudicated in state court, this court is required to abstain. See 28 U.S.C.A. § 1334(c)(2).

### III. CONCLUSION

For the reasons noted above, the court remands this case to the Court of Common Pleas for Greenville County, South Carolina.

It is therefore

**ORDERED** that this case is remanded to the Court of Common Pleas for Greenville County, South Carolina.

**IT IS SO ORDERED.**

                                                  s/ Henry M. Herlong, Jr.
                                                  United States District Judge

Greenville, South Carolina
August 10, 2005